ROBERT WISNIEWSKI (RW-5308)      **14 CV      7774**
ROBERT WISNIEWSKI, P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSE FERNANDEZ, SANTIAGO MARTINEZ,
YOLAINE DINAC, LANDRUM BREWER
SHETTLES JR., RAYMOND SPRINGBORG, BARRY
JACOBS, and HENRYK KUBERA,                              **Docket No:**

                         Plaintiffs,

                         -against-

FARRELL'S LIMOUSINE SERVICE CORP.,                      **JURY TRIAL DEMANDED**
FARRELL'S LIMOUSINE SERVICE, LLC,
FARRELL'S LEASING COMPANY, INC.,
MARGUERITE FARRELL, PATRICK FARRELL,
URSULA FARRELL, PAUL LEONE, and
PAUL BARCELLOS,

                         Defendants.
-------------------------------------------------------------X

## COMPLAINT

Plaintiffs Jose Fernandez ("Fernandez"), Santiago Martinez ("Martinez"), Yolaine Dinac

("Dinac"), Landrum Brewer Shettles Jr. ("Shettles"), Raymond Springborg ("Springborg"),

Barry Jacobs ("Jacobs"), and Henryk Kubera ("Kubera"), by their attorneys, Robert Wisniewski

P.C., as and for their Complaint against Defendants Farrell's Limousine Service Corp.

("Limousine Corp."), Farrell's Limousine Service, LLC ("Limousine LLC"), Farrell's Leasing

Company, Inc. ("Leasing Company") (collectively the "Corporate Defendants"), Marguerite

Farrell, Patrick Farrell, Ursula Farrell, Paul Leone, and Paul Barcellos (collectively, the

"Individual Defendants"), state as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action against all Defendants to recover unpaid wages, unpaid overtime wages, and other actual damages, liquidated damages, and reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA") and the various wage orders promulgated by the U.S. Department of Labor and codified in 29 C.F.R. § 500 *et seq.*, the New York state common law; and the New York Labor Law, including without limitation Articles 6 and 19 ("New York Labor Law"), and various wage orders promulgated by the New York State Department of Labor as codified in 12 N.Y.C.R.R. §§ 137-143.

2.     Plaintiffs Fernandez, Martinez, Shettles, Springborg, and Jacobs (collectively the "Chauffeur Plaintiffs") bring the First through Eighth Claims for relief herein.  Plaintiff Dinac joins the First, Second, Third, and Fourth Claims, and brings the Ninth Claim for relief herein (discrimination) in her own capacity.  Plaintiff Kubera joins the Eighth Claim for relief herein (Defendants' unlawful deductions).

3.     Defendants provide luxury limousine services to private individuals primarily in the States of New York, New Jersey, Connecticut, Massachusetts, and Pennsylvania.

4.     The Chauffeur Plaintiffs were employed by Defendants as luxury limousine chauffeurs. The Chauffeur Plaintiffs were not compensated for all hours they worked, and Defendants illegally withheld gratuities that were intended for them and made illegal deductions from their paychecks and the paychecks of Plaintiff Kubera.  Furthermore, several of the Plaintiffs regularly worked over 40 hours per week, but were not paid proper overtime

wages.  Finally, Defendants discriminated against Plaintiff Dinac and fired her due in whole or part to her national origin.

## PARTIES, JURISDICTION AND VENUE

5.    Plaintiff Fernandez, at all relevant times herein, was and is a resident of the State of New York, New York County.

6.    Fernandez worked for Defendants as a chauffeur from approximately November 2000 until May 2008. Until 2006 he worked as many as 75 hours a week, Sunday through Friday from 6 AM until 9 PM.  Starting in 2006 he worked 45 hours a week, Monday through Friday from 8 AM to 5 PM.  His starting wage was $6 per hour, and his ending wage was $8 per hour.

7.    Plaintiff Martinez, at all relevant times herein, was and is a resident of the State of New York, Kings County.

8.    Martinez worked for Defendants as a chauffeur from September 1999 until August 11, 2011. He regularly worked over 70 hours a week, Sunday through Friday (and occasionally on Saturdays as well), from 7 PM to 7 AM.  On some occasions he worked as many as 100 hours per week.  Martinez was paid $8 per hour.

9.    Plaintiff Dinac, at all relevant times herein, was and is a resident of the State of New York, Queens County.

10.   Dinac worked for Defendants as a data entry clerk from approximately 1984 until July 31, 2012.  Her weekly schedule was Monday through Friday, 10 AM to 6 PM.  She received a weekly gross salary of $657 per week for her labor.

11.   Plaintiff Shettles, at all relevant times herein, was and is a resident of the State of New

York, New York County.

12. Shettles has worked as a chauffeur for Defendants from approximately 1985 through the present. His weekly schedule at all relevant times has been Tuesday through Saturday, from 4 PM until 12 AM, for $8 per hour.

13. Plaintiff Springborg, at all relevant times herein, was and is a resident of the State of New York, New York County.

14. Springborg has worked as a chauffeur for Defendants from October 3, 2005 through the present. Prior to May 2014, Springborg regularly worked as many as 60 hours a week, Monday through Saturday, from 12 PM to10 PM, for $8 per hour.

15. Plaintiff Jacobs, at all relevant times herein, was and is a resident of the State of New York, New York County.

16. Jacobs worked for as a chauffeur for Defendants from September 16, 2003 until approximately March 2012. Jacobs began his employment on a part-time basis at a rate of $6 per hour. In November 2003 he became a full-time employee, working from Monday through Friday for $6.50 per hour. In 2009, Jacobs received a raise to $7.25 per hour reflecting an increase in the minimum wage.

17. Plaintiff Kubera, at all relevant times herein, was and is a resident of the State of New York, Kings County.

18. Kubera worked for Defendants from 2003 until on or around October 2011 as a chauffeur, and from June 2010 until October 2011 as a house driver.

19. Kubera began his employment at a rate of $6.30 per hour, working weekly shifts of 50 to 60 hours. In January 2006 his pay was raised to $6.75 an hour; then $7.15 an hour in

January 2007; then $8 an hour in May 2007.  In June 2010 he was promoted to house driver, for which he was paid $12 an hour, although he still occasionally performed chauffeuring work for which he was paid $8 an hour.

20.    On information and belief, Defendant Marguerite Farrell, at all relevant times herein, was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the Corporate Defendants.

21.    On information and belief, Defendant Patrick Farrell, at all relevant times herein, was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the Corporate Defendants.

22.    On information and belief, Defendant Ursula Farrell, at all relevant times herein, was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the Corporate Defendants.

23.    On information and belief, Defendant Paul Leone, at all relevant times herein, was and is a resident of the State of New York, Richmond County, and was an officer, director, managing agent, and/or owner of the Corporate Defendants.

24.    On information and belief, Defendant Paul Barcellos, at all relevant times herein, was and is a resident of the State of New York, Queens County, and was an officer, director, managing agent, and/or owner of the Corporate Defendants.

25.    Defendant Limousine Corp. was and is a corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 430 East 92nd St., New York, NY 10128.

26.    Defendant Limousine LLC was and is a limited-liability corporation duly organized

under and existing by virtue of the laws of the State of New York, and having its principal place of business at 430 East 92nd St., New York, NY 10128.

27.    Defendant Leasing Company, Inc. was and is a corporation duly organized under and existing by virtue of the laws of the State of New York and having its principal place of business at 430 East 92nd St., New York, NY 10128.

28.    This Court has personal jurisdiction over the Corporate Defendants in that they are incorporated in the State of New York.

29.    This Court has personal jurisdiction over the Individual Defendants in that they are all citizens and residents of New York.

30.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

31.    Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of Defendants travel between states and operate vehicles and use other goods and materials made outside New York, and Defendants are thus employers subject to the jurisdiction of the FLSA.

32.    This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because all Defendants reside in New York.

## JURY DEMAND

33.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

*Facts Relating to Defendants' Violations of Wage and Labor Laws*

34.     At all times relevant herein, Plaintiffs were persons covered by, and/or intended to benefit from, the provisions of New York Labor Law and various federal laws, including the Fair Labor Standards Act, in respect to the work they provided for the Defendants.

35.     Plaintiffs have been employees of Defendants during the six years immediately preceding the initiation of this action.

36.     Defendants had a policy and practice of misclassifying their employees as exempt from wage and overtime laws, of not paying their employees for all hours worked, and of not paying them at the appropriate overtime rate for all hours worked over 40 hours per week.

37.     On information and belief, Defendants improperly classified chauffeurs as employees exempt from the requirements of federal and state labor laws, pursuant to the motor carrier exemption of the FLSA.

38.     The motor carrier exemption applies only to drivers of vehicles regulated by the U.S. Department of Transportation ("DOT"), which consist of vehicles: (a) weighing 10,001 pounds or more; (b) designed to transport more than 8 passengers for compensation; (c) designed to transport more than 15 passengers not for compensation; or (d) used to transport hazardous materials.

39.     The motor carrier exemption does not apply to the Chauffeur Plaintiffs.  Although Defendants had vehicles capable of transporting 8 or more people, any occasions on

which the Chauffeur Plaintiffs drove vehicles containing more than eight passengers were *de minimis*. Furthermore, upon information and belief, Defendants did not have the proper DOT certification.

40. Defendants similarly misclassified Plaintiff Dinac as an exempt employee under FLSA and the New York labor laws.

41. Although Dinac received a salary rather than hourly wage, her work duties indicate that she was improperly classified as an exempt employee. Dinac's work responsibilities included answering phones, entering data, and handling general clerical duties. She did not exercise independent judgment or discretion on any matters of considerable significance to Defendants' business.

42. Furthermore, Dinac was paid like an hourly employee when it suited Defendants to do so. If Dinac worked less than 40 hours per week, her weekly pay was docked. However, she did not receive additional compensation when she worked in excess of 40 hours, which she periodically did.

43. Plaintiffs Fernandez, Martinez, Springborg, and Dinac regularly worked in excess of 40 hours per week, but were never paid at the proper overtime rate for those hours.

44. In addition to failing to pay overtime, Defendants failed to pay the Chauffeur Plaintiffs for all hours worked. For example, if a driver was instructed to pick up a passenger at a particular location, but the passenger never showed up, the chauffeur would not be paid. Or if a chauffeur were instructed to pick up a passenger at an airport and the passenger was delayed, the chauffeur would only be paid for the time he spent waiting that was charged to the client, regardless of how much time he actually spent working.

45. Upon information and belief, Defendants were aware of their duty to pay the Chauffeur Plaintiffs for each hour worked, and to pay overtime wages for each hour worked in excess of 40 hours per week, but failed to do so.

46. As a result, the various violations of law which are alleged herein were committed intentionally and willfully by Defendants.

47. Upon information and belief, Defendants further willfully disregarded and purposefully evaded recordkeeping requirements of the New York Labor Law and the FLSA by failing to maintain proper and complete timesheets or payroll records.

### Facts Relating to Unlawful Deductions for Tickets and Vehicle Repairs and Retention of Gratuities

48. New York Labor Law Section 193 permits only deductions from an employee's paycheck which are "expressly authorized in writing by the employee and are for the benefit of the employee," and prohibits an employer from requiring an employee to make any payments "by separate transaction unless such charge or payment is permitted as a deduction from wages . . ."

49. When the Chauffeur Plaintiffs began their employment with Defendants, they were promised by Defendants that, in addition to their regular wages, they would receive gratuities for their services from clients of 15 to 25 percent. These gratuities were supposed to be added to the Chauffeur Plaintiffs' paychecks.

50. However, the Chauffeur Plaintiffs did not always receive the full amount of the gratuities given to them by passengers because Defendants would pay portions of the gratuities to others. For example, in order to secure the business of certain hotels, Defendants

permitted hotel management and employees to take a portion of the gratuities owed to the Chauffeur Plaintiffs as a "finder's fee," without the Chauffeur Plaintiffs' consent.

51.   Defendants made other unlawful deductions from the paychecks of Plaintiff Kubera and the Chauffeur Plaintiffs.

52.   Defendants demanded that chauffeurs provide exceptionally fast and personalized service to clients. As a result of these demands, chauffeurs sometimes received tickets for violations of traffic and parking laws and similar infractions.

53.   Defendants deducted amounts to pay the fines for these tickets from the paychecks of Kubera and the Chauffeur Plaintiffs.

54.   Defendants also demanded that chauffeurs pay for repairs for accidents that occurred during the course of chauffeurs' work, even if the accident was not caused by the chauffeurs, and deducted the costs of repairs from the paychecks of Kubera and the Chauffeur Plaintiffs.

55.   Neither Kubera nor any of the Chauffeur Plaintiffs expressly agreed to these unlawful deductions in writing, and these deductions were not for the benefit of the employees.

56.   Even if a client offered to pay for a ticket, Defendants would contact the client and represent to the client that charges for tickets were a company expense and not paid by the chauffeurs, although, in fact, Defendants demanded that the chauffeurs pay the tickets.

57.   In 2011, Kubera filed a complaint with the New York Department of Labor regarding these illegal deductions.  Upon information and belief, Defendants discontinued their practice of deducting the charges for tickets directly from employees' paychecks in

response to Kubera's complaint.

58. However, while deductions were no longer made directly from employees' paychecks, Defendants still demanded that chauffeurs pay Defendants the amount of any tickets received, and these payments still constituted an unlawful deduction from the wages of the Chauffeur Plaintiffs.

59. Defendants' deductions and demands for payment for tickets were done with knowledge of their impropriety, and were intentional and willful.

***Facts Related to National Origin Discrimination by Defendants for the Termination of Plaintiff Dinac***

60. Plaintiff Dinac is of West Indian origin.

61. The Individual Defendants are all of Caucasian descent and American origin. At all relevant times herein, upon information and belief, most or all of the managerial and supervisory employees of the Corporate Defendants were of Caucasian descent and/or American origin.

62. Defendants engaged in a pattern of discriminatory harassment and abuse towards Dinac that culminated in her firing in July 2012.

63. Defendants and their employees regularly made belittling, derogatory, and disparaging comments to Dinac, such as saying "You sit on your *expletive* and make *expletive* mistakes." Upon information and belief, no similar comments were ever directed towards Caucasian and/or American office staff.

64. Dinac was reprimanded by Defendants for taking personal calls at work and told to stop, whereas workers who were Caucasian and/or American regularly took personal calls and

were never reprimanded or told to stop.

65.   On or about June 2012, Dinac was suspended for a week for arriving to work late. Caucasian and/or American workers who came in late were never suspended by Defendants.

66.   On or about June 2012, Dinac began receiving fewer assignments, and was told by Defendants to "find stuff to do if you still want to work here."  Other similarly-employed workers – most or all of whom were of Caucasian descent and/or American origin – did not have their workload reduced, and were not threatened with loss of employment.

67.   In July 2012, Dinac was told that her position was being "cancelled" and that she was fired.  In fact, upon information and belief, she was immediately replaced thereafter by a Caucasian worker of American origin.

68.   Dinac was fired by Defendants due in whole or part to her national origin.

*Facts Relating To Defendants as Joint Employers of Plaintiffs*

69.   Upon information and belief, Defendants Limousine Corp. and Limousine LLC are functionally one economic entity.  Plaintiffs were employed by both companies at all relevant times herein.

70.   Upon information and belief, Defendant Leasing Company provided the vehicles used by the Chauffeur Plaintiffs in their work as chauffeurs for Limousine Corp. and Limousine LLC.  Limousine Corp. and Limousine LLC can only function by virtue of Leasing Company.

71.   Leasing Company thus forms an integral part of the operation of Limousine Corp. and Limousine LLC.

-12-

72.  Upon information and belief, the Corporate Defendants are, or have been, conducting business as a joint venture.

73.  The Corporate Defendants all share officers, office space, and phone numbers.

74.  Upon information and belief, the Corporate Defendants share funds and assets, the funds of one Corporate Defendant are used by other Corporate Defendants, and the assets of Corporate Defendants are used without regard to which Corporate Defendant is the actual owner.

75.  Upon information and belief, the Corporate Defendants have transferred assets and/or assigned claims or accounts receivable to one or more of the other Corporate Defendants.

76.  The Corporate Defendants are alter-egos of each other, and, as will be established at trial, for the purpose of the claims made by Plaintiffs herein, the Corporate Defendants have no separate legal existence from each other.  As a result, the Corporate Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

77.  The Corporate Defendants constitute a single employer or enterprise for the purposes of their employment of Plaintiffs.  As a result, the Corporate Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

78.  At all relevant times herein, the Individual Defendants have acted for and on behalf of the Corporate Defendants, with the power and authority vested in them as officers, agents, and employees of the Corporate Defendants, and have acted in the course and scope of their duty and function as agents, employees, and managers and officers of the Corporate Defendants.

79.   At all relevant times herein, the Individual Defendants were and still are owners, directors, officers, managers, employees and/or agents of the Corporate Defendants, and have, jointly and severally, exercised operational control over the Corporate Defendants, and permitted the numerous violations of various laws described herein.

80.   The Individual Defendants had control over the conditions of Plaintiffs' employment, their work schedules, the rates and methods of payment of their wages, and the maintenance of their employment records.

81.   At all relevant times herein, upon information and belief, the Individual Defendants have directly managed, handled, or been responsible for the proper management and handling of the payroll and payroll calculations for the Corporate Defendants, including signing or issuing checks for the Plaintiffs.

82.   Upon information and belief, as some of the largest shareholders of the Corporate Defendants, Marguerite Farrell, Patrick Farrell, and Ursula Farrell are individually responsible for unpaid wages under the New York Business Corporation Law (**Exhibit 2**).

83.   Upon information and belief, in conducting the affairs of the Corporate Defendants, the Individual Defendants failed to comply with the corporate formalities, usurped the assets of the Corporate Defendants for personal use, and commingled their personal assets with the assets of the Corporate Defendants.

84.   The Corporate Defendants are the alter-egos of the Individual Defendants, and, as will be established at trial, for the purpose of the claims made by Plaintiffs herein, the Corporate Defendants had no separate legal existence from the Individual Defendants.

85.     At all relevant times herein, upon information and belief, the Individual Defendants used the Corporate Defendants in order to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

86.     The Individual Defendants have willfully and/or intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of their positions as controlling owners, shareholders, directors, officers and/or managers of the Corporate Defendants, have assumed personal liability for the claims of the Plaintiffs herein.

87.     As a matter of economic reality, all Defendants are joint employers of Plaintiffs; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract brought by Dinac and the Chauffeur Plaintiffs against All Defendants)

88.     Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

89.     Dinac and the Chauffeur Plaintiffs entered into oral contracts with Defendants to supply work as chauffeurs and office workers in furtherance of Defendants' business in exchange for hourly wages.

90.     Dinac and the Chauffeur Plaintiffs satisfactorily supplied labor and complied with the terms of their employment agreements with the Defendants, and were therefore entitled to the wages they rightfully earned while working for the Defendants.

91.     Defendants failed or refused to pay Dinac and the Chauffeur Plaintiffs the wages to which

they were entitled under their employment agreements.

92. Defendants' failure or refusal to pay Dinac and the Chauffeur Plaintiffs the wages to which they were entitled under their employment agreements constituted a breach of their employment agreements.

93. By virtue of the foregoing breaches of contract by Defendants, Dinac and the Chauffeur Plaintiffs have been damaged in an amount to be proven at trial, based upon an accounting of the amount they should have been paid as contemplated by their employment agreements, less amounts actually paid to them, together with an award of interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit brought by Dinac and the Chauffeur Plaintiffs against All Defendants)

94. Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

95. Dinac and the Chauffeur Plaintiffs performed work and services for Defendants.

96. Dinac and the Chauffeur Plaintiffs had a reasonable expectation of payment for the hours they worked for Defendants, but Defendants failed to recompense them for all the hours they worked.

97. Dinac and the Chauffeur Plaintiffs are entitled to payment for the unpaid hours they worked for Defendants at a rate which constitutes the reasonable value of their services, less amounts actually paid to them, together with an award of interest, costs, disbursements, and attorneys' fees.

-16-

## THIRD CLAIM FOR RELIEF
### (Unpaid overtime under FLSA brought by Dinac, Fernandez, Martinez, and Springborg against All Defendants)

98.     Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

99.     Pursuant to the FLSA and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq.*, Dinac and the Chauffeur Plaintiffs were entitled to overtime wages, which Defendants intentionally failed to pay in violation of such laws.

100.    Specifically, Chauffeur Plaintiffs Fernandez, Martinez, and Springborg routinely worked in excess of 40 hours per week without being paid at the proper overtime rate. Although Defendants sought to classify their chauffeurs under the motor carrier exemption, the Chauffeur Plaintiffs did not drive any vehicles in excess of 10,000 lbs., or routinely drive vehicles containing 8 or more passengers.

101.    Plaintiff Dinac also worked in excess of 40 hours per week without being paid at the proper overtime rate. Although Dinac was salaried, her work duties – answering phones, entering data, and general clerical work – indicate that she was not an exempt employee under FLSA, and should have been paid at the proper overtime rate for all hours in excess of 40.

102.    Defendants knew or should have known that they were required to pay their employees overtime wages, but knowingly and willfully disregarded this requirement. Furthermore, Defendants knowingly and willfully attempted to evade the federal wage and hour requirements by purposefully misclassifying employees.

103.    Wherefore Dinac, Fernandez, Martinez, and Springborg seek a judgment against

attorneys' fees, interest, and costs as provided for by FLSA.

## FOURTH CLAIM FOR RELIEF
### (Unpaid overtime under New York Labor Law brought by Dinac, Fernandez, Martinez, and Springborg against All Defendants)

104.    Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

105.    Pursuant to N.Y. Labor Law Articles 6 and 19, Labor Law Sections 198 and 663, and the Wage Orders issued under the N.Y. Labor Law at 12 N.Y.C.R.R. §§ 137-143, Dinac and the Chauffeur Plaintiffs were entitled to overtime wages, which Defendants intentionally failed to pay in violation of such laws.

106.    Specifically, Chauffeur Plaintiffs Fernandez, Martinez, and Springborg routinely worked in excess of 40 hours per week without being paid at the proper overtime rate.  Although Defendants sought to classify their chauffeurs under the motor carrier exemption, the Chauffeur Plaintiffs did not drive any vehicles in excess of 10,000 lbs., or routinely drive vehicles containing 8 or more passengers.

107.    Plaintiff Dinac also worked in excess of 40 hours per week without being paid at the proper overtime rate.  Although Dinac was salaried, her work duties – answering phones, entering data, and general clerical work – indicate that she was not exempt from the New York labor laws, and should have been paid at the proper overtime rate for all hours in excess of 40.

108.    Defendants knew or should have known that they were required to pay their employees overtime wages, but knowingly and willfully disregarded this requirement.  Furthermore, Defendants knowingly and willfully attempted to evade the state wage and hour

requirements by purposefully misclassifying employees.

109. Wherefore Dinac, Fernandez, Martinez, and Springborg seek a judgment against Defendants for unpaid overtime wages, the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Dinac, Fernandez, Martinez, and Springborg, along with an award of liquidated damages, attorneys' fees, interest and costs as provided for by the New York labor laws.

**FIFTH CLAIM FOR RELIEF**
**(Unpaid hours worked under FLSA brought by the Chauffeur Plaintiffs against All Defendants)**

110. Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

111. Pursuant to FLSA and the Wage Orders issued under FLSA at 29 C.F.R. § 500 *et seq.*, the Chauffeur Plaintiffs were entitled to be paid for all hours they worked, which Defendants intentionally failed to pay in violation of such laws.

112. Specifically, the Chauffeur Plaintiffs routinely spent working time waiting for passengers for which they were not compensated. The Chauffeur Plaintiffs were also not compensated if a passenger did not show up for his requested ride, no matter how much time the Chauffeur Plaintiffs spent traveling to or from the location or waiting for the passenger.

113. Defendants knew or should have known that they were required to pay the Chauffeur Plaintiffs for all time they spent in Defendants' employ, but knowingly and willfully disregarded this requirement.

114. Wherefore the Chauffeur Plaintiffs seek a judgment against Defendants for unpaid wages,

-19-

the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, the Chauffeur Plaintiffs, along with an award of liquidated damages, attorneys' fees, interest and costs as provided for by FLSA.

## SIXTH CLAIM FOR RELIEF
### (Unpaid hours worked under New York Labor Law brought by the Chauffeur Plaintiffs against All Defendants)

115.    Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

116.    Pursuant to N.Y. Labor Law Articles 6 and 19, Labor Law Sections 198 and 663, and the Wage Orders issued under the N.Y. Labor Law at 12 N.Y.C.R.R. §§ 137-143, the Chauffeur Plaintiffs were entitled to be paid for all hours they worked, which Defendants intentionally failed to pay in violation of such laws.

117.    Specifically, the Chauffeur Plaintiffs routinely spent working time waiting for passengers for which they were not compensated.  The Chauffeur Plaintiffs were also not compensated if a passenger did not show up for his requested ride, no matter how much time the Chauffeur Plaintiffs spent traveling to or from the location or waiting for the passenger.

118.    Defendants knew or should have known that they were required to pay the Chauffeur Plaintiffs for all time they spent in Defendants' employ, but knowingly and willfully disregarded this requirement.

119.    Wherefore the Chauffeur Plaintiffs seek a judgment against Defendants for unpaid wages, the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, the Chauffeur Plaintiffs, along with an award of

liquidated damages, attorneys' fees, interest and costs as provided for by the New York labor laws.

## SEVENTH CLAIM FOR RELIEF
### (Unlawful Retention of Gratuities under the New York Labor Laws brought by the Chauffeur Plaintiffs against All Defendants)

120.    Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

121.    As is common in the luxury limousine industry, customers routinely and voluntarily provided the Chauffeur Plaintiffs with gratuities in appreciation of the work they performed.

122.    The Chauffeur Plaintiffs satisfactorily supplied labor and complied with the terms of their employment agreements with Defendants and were therefore entitled to gratuities they rightfully earned while working for Defendants.

123.    Defendants regularly and unlawfully deducted or allowed others to deduct portions of the gratuities customers provided to the Chauffeur Plaintiffs.

124.    By retaining and/or permitting others to retain gratuities, Defendants violated the New York labor laws.

125.    Wherefore the Chauffeur Plaintiffs seek a judgment against Defendants for lost gratuities, along with attorneys' fees, interest, and costs.

## EIGHTH CLAIM FOR RELIEF
### (Unlawful Deductions under New York Labor Law Section 193 brought by Kubera and the Chauffeur Plaintiffs against All Defendants)

126.    Plaintiffs repeat each and every allegation previously made as if fully set forth herein.

## EIGHTH CLAIM FOR RELIEF
### (Unlawful Deductions under New York Labor Law Section 193 brought by Kubera and the Chauffeur Plaintiffs against All Defendants)

126.   Plaintiffs repeat each and every allegation previously made as if fully set forth herein.

127.   Defendants repeatedly made other unlawful and improper deductions for repairs, tickets, and accidents from the paychecks of Plaintiff Kubera and the Chauffeur Plaintiffs in violation of Section 193 of the New York Labor Law.

128.   Kubera and the Chauffeur Plaintiffs did not agree in writing to any of these deductions, and complained about them frequently to Defendants.

129.   While Defendants stopped automatically deducting such expenses from employees' paychecks after Kubera complained to the New York Department of Labor, Defendants still require the Chauffeur Plaintiffs to pay these expenses.

130.   As a result of the foregoing, Kubera and the Chauffeur Plaintiffs have been damaged, and seek a judgment in an amount to be determined at trial, together with attorneys' fees, interests, and costs.

## NINTH CLAIM FOR RELIEF
### (National Origin Discrimination under N.Y. City Admin. Code § 8-107 brought by Plaintiff Dinac against All Defendants)

131.   Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

132.   At all relevant times herein, the Corporate Defendants had at least four persons in their employ, and are therefore required to comply with the Civil Rights Laws of the City of New York, including N.Y. City Admin Code § 8-107.

133.   N.Y. City Admin Code § 8-107(1)(a) prohibits employers from discriminating against an

disparaging comments by Defendants to which other employees who were not of West Indian origin were not subject.

135. Dinac was subject to restrictions and discipline to which other employees who were not of West Indian origin were not subject.

136. Defendants fired Dinac ostensibly because they were "cancelling" her position, but immediately replaced her with a worker who was not of West Indian origin.

137. In truth, Dinac was discriminatorily fired due to her national origin.

138. The discrimination against Dinac was created and fostered by management, and Defendants did not take adequate steps to prevent or address instances of discrimination as they arose.

139. Said discrimination occurred with malice and reckless disregard of Dinac's rights.

140. As a direct and proximate result of said discrimination, Dinac suffered and continues to suffer damages in the form of lost income, lost future earnings, mental and emotional anguish, and pain and suffering.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

a.   Compensatory damages in an amount to be determined at trial;

b.   Liquidated damages pursuant to the FLSA and N.Y. Labor Law;

c.   Back pay and front pay;

d.   Pre-judgment interest;

e.   Reinstatement of Plaintiff Dinac to her prior position; and

f.   Plaintiffs' costs and reasonable attorneys' fees;

d.      Pre-judgment interest;

e.      Reinstatement of Plaintiff Dinac to her prior position; and

f.      Plaintiffs' costs and reasonable attorneys' fees;

Together with such other and further relief as the Court deems just.

Dated: New York, New York
      September 23, 2014

ROBERT WISNIEWSKI P.C.

By: _____
    Robert Wisniewski, Esq. (RW-5308)
    Attorneys for Plaintiffs
    225 Broadway, Suite 1020
    New York, New York  10007
    (212) 267-2101